UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ORA PRICE                                    CIVIL ACTION

VERSUS                                       No. 12-992

HOUSING AUTHORITY OF NEW ORLEANS             SECTION B(2)


## ORDER AND REASONS

Before the Court is Defendant, Housing Authority of New Orleans ("Defendant"), with a Motion to Dismiss (Rec. Doc. No. 32) pursuant to Rules 12(b)(1), 12(h)(3), or in the alternative, 12(b)(6). Also in the alternative, they submit their motion pursuant to Rule 12(e). In response, Plaintiffs, Ora, Leonard, and Darryl Price ("Plaintiffs") submitted a Memorandum in Opposition (Rec. Doc. No. 57). For the reasons articulated below,

**IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED.**

## PROCEDURAL HISTORY

On April 19, 2012, Plaintiffs filed their complaint in this Court against Defendant and several others, including Interstate Realty Management Company ("Interstate Realty"). (Rec. Doc. No. 1 at 1). The complaint generally alleged several state and federal violations, the latter including deprivation of 14th Amendment rights, violations of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437 *et seq.* ("United States Housing Act"), and deprivation of civil rights under 42 U.S.C. §§ 1983 and 1985. *Id.* at 2.

Plaintiffs' claims appear to arise out of events surrounding

their residential eviction from 3110 Edith Weston Place in New Orleans, Louisiana. *Id.* at 6. Plaintiffs contend that they were wrongly evicted by Interstate Realty for a shooting on the premises that involved Plaintiff Ora Price's grandson, and resulted in "police action on the property." *Id.* at 7-9. Plaintiffs also insist that the subsequent termination by Defendant of their Section 8 voucher was wrongful. *Id.* at 9. On June 16, 2011, in an evidentiary hearing requested by Interstate Realty in the First City Court for the Parish of Orleans, a Rule to Evict was issued against the Plaintiffs.[1] (Rec. Doc. No. 31-1 at 3).

Plaintiffs appealed that ruling to the Louisiana Fourth

---

[1] The court's findings in the eviction proceeding included that: (1) the "First City Court has jurisdiction in cases of eviction" under LA. CODE CIV. P. art. 4844; (2) "there is no credible evidence that a formal grievance hearing was requested by [Plaintiffs Ora, Leonard, or Darryl Price];" and (3) Plaintiffs violated the lease agreement by allowing Oneal and Leroy Price to live at Ora Price's public housing address in contravention of the lease, and additionally allowed their unauthorized occupancy and (illegal) activities on the property to "threate[n] the health, safety, and right to peaceful enjoyment" of other residents and staff, also in violation of the lease agreement. (Rec. Doc. No. 31-2 at 3; *Id.* at 4; *Id.* at 5-6).

In addition to the December 5, 2010 shooting incident involving Oneal and Leroy Price, the court found, based on testimony, that the two would regularly be found "loitering" around, or "going in and out of," the residence "at varying hours of the day and night." *Id.* at 4-5. This activity, the court said, "was part of an ongoing inquiry by NOPD into suspected criminal activity relating to Oneal Price and Leroy Price," and violated the "One Strike Policy" that Plaintiffs agreed to in their lease. *Id.* at 5. Further, the court stated that Oneal Price had a prior drug arrest and on one instance was stopped by police at Plaintiffs' address, but "fled the scene" and was later arrested and was serving time in jail at the time of the court's ruling. *Id.* at 5. For those reasons, the court granted the Rule to Evict, finding that "[Plaintiffs] violated the lease agreement by allowing unauthorized occupants to reside at the leased premises and additionally allowed those unauthorized occupants to engage in activities which threatened the health, safety, and right of peaceful enjoyment of residents and staff." *Id.* at 6.

Circuit Court of Appeal,² and on March 7, 2012, the Fourth Circuit affirmed, stating that "[c]onsidering the testimony and evidence presented at trial," the trial court did not err in granting the Rule to Evict.³ *Id.*; (Rec. Doc. No. 31-3 at 9). Shortly after being denied a rehearing by the Louisiana Fourth Circuit Court of Appeal on March 28, 2012, Plaintiffs applied to the Louisiana Supreme Court. (Rec. Doc. No. 31-1 at 3). One month before Plaintiffs were denied certiorari review by the Louisiana Supreme Court on May 18, 2012, they filed their complaint in this Court on April 19, 2012. *Id*. at 1, 3. Thus, the instant complaint was filed amidst a pending state court proceeding.

Plaintiffs' claim that Defendant "[had] a duty to monitor and evaluate the administrative and managerial actions of their contractors [and sub-contractors] vested with the management of public housing to ensure compliance with mandate[s] of the federal government, . . . federal statute[s], [the C]onstitution and [C]ode of [F]ederal [R]egulations." (Rec. Doc. No. 1 at 5, 9). They claim that Defendant "neglected to investigate the allegations of [Interstate Realty] against plaintiff, and permitted the revocation of their [S]ection 8 voucher and housing

---

² The Court notes that information regarding these state court proceedings was absent from the former motions submitted by Defendants James Ryan, James Ryan & Associates, L.L.C., Plaintiffs, and the record, itself.

³ Plaintiffs' claims in that appeal were that "the trial court erred in granting the Rule to Evict, adversely affecting [Plaintiffs'] right to occupy the property under federal law, and that the evidence was insufficient to support such a ruling," and further that the judgment "was obtained by fraud and ill practices." (Rec. Doc. No. 31-3 at 7, 8).

3

accommodation." *Id.* at 9. Plaintiffs also claim that Defendant "possessed the power of authority to prevent the action taken against plaintiffs, but failed to take any action in prevention/correction of the adverse action." *Id.* at 12.

## **CONTENTIONS OF DEFENDANTS**

Defendant contends that, in accordance with FED. R. CIV. PRO. 12(b)(1), the Court lacks federal question subject matter jurisdiction over Plaintiffs' claims, and further that, in accordance with FED. R. CIV. PRO. 12(h)(3), Plaintiffs' complaint does not state an injury-in-fact and, therefore, Plaintiffs do not have standing to bring this suit. (Rec. Doc. No. 32 at 1); (Rec. Doc. No. 32-1 at 3). In the alternative, Defendant contends that Plaintiffs fail to state a claim for which relief can be granted. (Rec. Doc. No. 32 at 1). Further, Defendant asserts that "[e]ven assuming that all of the factual allegations in the Complaint concerning the termination of the Plaintiffs' lease are true," Plaintiffs were not deprived of any rights when they were evicted. (Rec. Doc. No. 32-1 at 3). Also, in the alternative, Defendants contend that the complaint filed by Plaintiffs is so vague that Defendant cannot reasonably prepare a response. *Id.* at 5. Therefore, if the case is not dismissed, Plaintiffs, pursuant to FED. R. CIV. PRO. 12(e), should be required to re-plead the entire complaint, and specifically allege the acts of Defendant

4

complained of, and the statutes under which the claim is brought. *Id.*

## CONTENTIONS OF PLAINTIFFS

Plaintiffs insist that federal question subject matter jurisdiction exists for their claims pursuant to 28 U.S.C. §§ 1331, 1343,[4] and 1367, 42 U.S.C. § 1437(a), and 42 U.S.C. §§ 1983 and 1985. (Rec. Doc. No. 57 at 1, 2). They also state that their complaint meets the requirements necessary to state a claim. *Id.* at 3. Plaintiffs insist that the sufficiency of their complaint should be judged "not [on] whether or not they will prevail." *Id.* Plaintiffs also maintain that they have a private right of action against defendants. *Id.* at 5.

## LAW AND ANALYSIS

**A. Standard of Review**

A court presented with a 12(b)(1) motion for lack of subject matter jurisdiction should consider that motion first before addressing any motion regarding the merits of the case, so as to avoid prematurely dismissing a case with prejudice. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*). A court's dismissal based on Rule 12(b)(1) is not a determination on the merits and does not prevent the plaintiff from pursuing

---

[4] 28 U.S.C. § 1343(a) in pertinent part, provides for recovery: (1)"for any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42," and (2) "from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent." 28 U.S.C. § 1343(a)(1)-(a)(2).

5

the claim in a court with proper jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt*, 561 F.2d at 608).

**B. Lack of Subject Matter Jurisdiction**

A lack of subject matter jurisdiction may be found in: (1) the complaint, (2) the complaint supplemented by undisputed facts contained in the record, or (3) "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Id.* (citing *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995)).

Federal subject matter jurisdiction is met when either the requirements of diversity are established or when the plaintiff's claims arise under federal law. 28 U.S.C. §§ 1331, §1332(a) (2006). The parties do not allege and the facts do not show that there is diversity jurisdiction under 28 U.S.C. § 1332. Absent diversity, federal question jurisdiction is required.

"'[F]ederal question' jurisdiction has long been governed by the well-pleaded-complaint rule, which requires that a federal question be facially apparent from a 'properly pleaded complaint.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392

(1987)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)(quoting Fed. R. Civ. Pro. 8(a)(2)). In addition, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Plaintiffs filed their complaint *pro se*. The Supreme Court has stated that "[a] document filed *pro se* 'is to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Plaintiffs, however, do not cite any facts in their complaint regarding the actions of Defendant, other than that Defendant revoked their Section 8 voucher. (Rec. Doc. No. 1 at 9). Also, despite Plaintiffs' general allegations, against several other named defendants, of various federal statutory and state law violations, Plaintiffs do not cite any authority under which Defendant would have any "duty to monitor" or "investigate" the actions of other named defendants, or prevent Plaintiffs' eviction by the state court. (Rec. Doc. No. 1 at 1-2, 9, 12).

Further, most of the facts and allegations contained in Plaintiffs' complaint revolve around Plaintiffs' eviction and the

state court eviction proceeding, not Defendant's actions (*i.e.*, the revocation of the Plaintiffs' voucher, which appears to have occurred after the eviction). (Rec. Doc. No. 1). It is not alleged, nor does the record suggest, that Defendant was involved in the eviction of Plaintiffs or the eviction proceeding. Plaintiffs do, however, loosely allege that Defendant "permitted the revocation of their [S]ection 8 voucher." *Id.* at 9.

According to 24 C.F.R. § 982.552(b)(2), "the [public housing authority] must terminate program assistance for a family evicted from housing assisted under the program for serious violation of the lease." 24 C.F.R. § 982.552(b)(2). Amongst the listed obligations of a participant family in the Section 8 program: "[t]he family may not commit any serious or repeated violation of the lease;" "[t]he composition of the assisted family residing in the unit must be approved by the [public housing authority] . . . [and n]o other person . . . may reside in the unit;" and "[t]he members of the *household* may not engage in . . . criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents . . . ." 24 C.F.R. § 982.551(e)-(l). Many similar obligations were also contained in Plaintiffs' lease agreement with Interstate Realty, and the One Strike Policy signed by Plaintiffs. (Rec. Doc. No. 31-2 at 5). Given the state court findings in the eviction proceeding that Plaintiffs were in

8

violation of several of these obligations, there does not appear to be anything improper about Defendant's actions in revoking Plaintiffs' Section 8 voucher. (Rec. Doc. No. 31-2 at 5, 6).

Moreover, this Court has previously held that the *Rooker-Feldman* doctrine does not allow for district courts to entertain collateral attacks on state court judgments, which is precisely what Plaintiffs urge in this case.[5] *Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.*, 785 F. Supp. 2d 579, 586 (E.D. La. 2011). Without any supporting facts or authority to accompany their conclusory allegations, Plaintiffs have failed to meet their burden in showing federal court authority to review the state court judgment at issue. Plaintiff should seek available relief within the state court appellate system for such review.

**B. Defendants' 12(b)(6) Motion to Dismiss and 12(e) Motion for a More Definite Statement**

---

[5] In *Storyville*, the plaintiffs asserted various civil and constitutional rights violations arising out of the defendants' allegedly conspiratorial actions which resulted in an "erroneous ruling" in the eviction proceeding. *Storyville*, 785 F. Supp. 2d at 586. The court noted that application of the *Rooker-Feldman* doctrine is "limited to cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 586 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "If the issues before the federal district court are 'inextricably intertwined' with a state court judgment, the Court is 'in essence being called upon to review the state-court decision,'" and the federal district court does not have the authority to do so. *Id.* at 587 (quoting *United States v. Shepard*, 23 F.3d 923, 924 (5th Cir. 1994)). Further, the court stated, "the casting of a complaint in the form of a civil rights action cannot circumvent this rule." *Id.* (quoting *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994)). The *Rooker-Feldman* doctrine did not apply in *Storyville* because the state court proceedings had not yet ended at the time of the district court's decision. *Id.* at 590. Here, however, the *Rooker-Feldman* doctrine is fully applicable.

9

Because this Court lacks jurisdiction over the instant case, Defendants' 12(b)(6) Motion to Dismiss for failure to state a claim and 12(e) Motion for a More Definite Statement will not be considered at this time.

New Orleans, Louisiana, this 27th day of June, 2012.

_____
UNITED STATES DISTRICT JUDGE